1  UNITED STATES DISTRICT COURT

2  DISTRICT OF NEVADA

3  Ken Landow, Ken Landow IRA, and Ken          Case No.: 2:18-cv-00499-JAD-VCF
   Landow Associates Limited Partnership,
4
        Plaintiffs
5                                               **Order Granting Motion to Dismiss with
   v.                                           Leave to Amend**
6
   Alvery A. Bartlett, Jr. and Berthel Fisher &  [ECF No. 6]
7  Company Financial Services Inc.,

8        Defendants

9       Retired medical doctor Ken Landow alleges that between 2003 and 2011, Berthel Fisher

10 & Company Financial Services, Inc. and its employee, Alvery A. Bartlett, Jr., misled Landow

11 into spending millions of dollars to purchase dozens of high-commission, high-fee, high-risk,

12 illiquid, direct-participation-program, and private-placement securities.  Landow alleges that he

13 purchased the securities from Berthel Company because Bartlett claimed to have carefully

14 evaluated the securities' sponsors and deal points and found them to be safe, well-managed,

15 income-generating investments that were extremely favorable and appropriate for Landow's

16 income and retirement needs.  But, in truth, Landow alleges, neither Bartlett nor Berthel

17 Company conducted independent due diligence into any of the securities they recommended and

18 Landow purchased, and Bartlett used spreadsheets to mislead him about the value of the

19 securities, exaggerated the securities' prospects for success, and never told Landow that the

20 securities were high-fee, high-commission, risky, and illiquid investments.  Although this is

21 essentially a securities-fraud case, Landow pleads only state common-law claims—breach of

22 fiduciary duty, misrepresentations and omissions, negligence, and breach of contract.

23

Berthel Company and Bartlett move to dismiss all of Landow's claims, arguing that he has failed to allege enough facts to plead viable claims for relief, but what he does allege demonstrates that his claims are time barred or not actionable as a matter of law.[1] Although none of Landow's claims meets the *Iqbal-Twombly* pleading standard, it is not yet clear that he cannot plausibly plead any of them. I therefore grant defendants' motion but dismiss Landow's claims without prejudice and with leave to amend his pleading.

**Legal Standard**

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[2] While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[3] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[4] In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[5]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption

---

[1] ECF Nos. 6, 7. These joint dismissal motions are identical, and I find that they are suitable for disposition without oral argument. L.R. 78-1.

[2] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[3] *Twombly*, 550 U.S. at 570.

[4] *Iqbal*, 556 U.S. at 678.

[5] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)).

of truth.[6] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[7] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[8] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[9] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[10]

## Discussion

### A.    Breach of fiduciary duty

Common-law breach of fiduciary duty in Nevada requires proof of three elements: (1) the existence of a fiduciary relationship, (2) breach of a duty owed under that relationship, and (3) damages proximately caused by the breach.[11] "A fiduciary relationship is deemed to exist when one party is bound to act for the benefit of the other party."[12] "The Nevada Supreme Court has held that fiduciary duties arise as a matter of law in certain categories of relationships[,]" like insurer–insured, attorney–client, spouses, doctor–patient, and officer–corporation.[13] "In relationships falling outside these categories, Nevada law recognizes a duty owed in 'confidential relationships,' where 'one party gains the confidence of the other and purports to

---

[6] *Iqbal*, 556 U.S. at 678–79.
[7] *Id.*
[8] *Id.* at 679.
[9] *Id.*
[10] *Twombly*, 550 U.S. at 570.
[11] *Stalk v. Mushkin*, 199 P.3d 838, 843 (2009).
[12] *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880–81 (9th Cir. 2007).
[13] *Id.* at 881 (collecting cases).

3

act or advise with the other's interest in mind.'"[14] "Nevada also recognizes 'special relationships' giving rise to a duty to disclose, such that '[n]ondisclosure . . . become[s] the equivalent of fraudulent concealment.'"[15]

Landow vaguely concludes that a fiduciary relationship existed between him and Bartlett under "applicable statues, rules and regulations, as well as under common law and industry standards of practice . . . ."[16] To support this conclusion, Landow alleges that Bartlett was his investment adviser to whom he told that he had a moderate risk tolerance, was married to his busy dermatology practice, and didn't want to take excessive risks with the funds that he was investing.[17] Landow claims that Bartlett "acknowledged these objectives and agreed to abide by [Landow's] wishes."[18] Landow contends that Bartlett became his "trusted advis[e]r" because they had weekly phone calls to discuss "retirement planning, income strategies, taxes[,] and broader market topics."[19] Landow also contends that his work obligations caused him to rely on Bartlett's investment advice.[20]

Berthel Company and Bartlett argue that these allegations are not enough to plausibly state that a fiduciary relationship existed between either of them and Landow as a matter of law. They theorize that, at best, Landow pleads that Bartlett was his stockbroker, but a stockbroker owes fiduciary duties only when he's given authority to make trades on the customer's account,

---

[14] *Id.* (quoting *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995)).
[15] *Id.* (quoting *Macintosh v. Jack Matthews & Co.*, 855 P.2d 549, 553 (Nev. 1993)).
[16] ECF No. 1-1 at ¶ 30.
[17] *Id.* at ¶¶ 11–12.
[18] *Id.* at ¶ 11.
[19] *Id.* at ¶ 7.
[20] *Id.* at ¶ 8.

and Landow clearly pleads that he, not Bartlett, controlled his own account.[21] That Bartlett was merely a stockbroker is not a fair characterization of Landow's allegations; he pleads facts to show that Bartlett advised him about investing his money for retirement. But the presumed-true fact that Bartlett acted as Landow's investment adviser is not enough to plausibly state the existence of a fiduciary relationship under Nevada law. Indeed, the Nevada Legislature didn't recognize that an investment adviser owed his client a fiduciary duty until 2017.[22]

Landow has similarly failed to plausibly state the existence of a fiduciary relationship between him and Berthel Company under Nevada law. Landow argues that the Nevada Supreme Court recognized in *Secretary of State v. Tretiak* that a securities broker-dealer has a "fiduciary duty to act in the best interests of customers."[23] *Tretiak* concerns the judicial review of an administrative decision by the Nevada Secretary of State, Securities Division in a state enforcement action. The language that Landow relies on is a quote from the hearing officer's conclusion that the broker-dealer's conduct justified sanctions. The *Tretiak* court mentions fiduciary duty only one other time. When concluding that the sanction imposed against the broker-dealer wasn't an abuse of discretion, the court explained that the Securities Division "reviewed [the broker-dealer's] breach of fiduciary duty and concluded that the revocation of its

---

[21] ECF No. 6 at 10.

[22] *Compare* Nev. Rev. Stat. § 90.575(1) (eff. July 1, 2017) (providing that "[a] broker-dealer, sales representative, investment adviser or representative of an investment adviser shall not violate the fiduciary duty toward a client imposed by NRS 628A.020" on financial planners), *with* Nev. Rev. Stat. § 628A.010(3) (eff. to June 8, 2017) (excluding, among others, licensed broker-dealers, sales representatives, and investment advisers from the definition of financial planner).

[23] ECF No. 12 at 3 (quoting *Secretary of State v. Tretiak*, 22 P.3d 1134, 1137 (Nev. 2001) (en banc)).

5

broker-dealer license was necessary to prevent future securities violations."[24] *Tretiak* cannot be fairly construed as holding that securities broker-dealers are fiduciaries.

This leaves the question of whether Landow has plausibly pled that either a confidential or a special relationship existed between him and either defendant. Neither party squarely addresses this issue. "[A] confidential relationship may arise by reason of kinship or professional, business, or social relationships between the parties."[25] This type of relationship "exists when one party gains the confidence of the other and purports to act or advise with the other's interests in mind . . . ."[26] "When a confidential relationship exists, the person in whom the special trust is placed owes a duty to the other party similar to the duty of a fiduciary, requiring the person to act in good faith and with due regard to the interests of the other party."[27]

Landow pleads no facts about his claimed relationship with Berthel Company, so he has failed to plausibly state that any relationship existed between him and that entity. Landow alleges just enough facts elsewhere in his complaint, however, to plausibly state that a confidential relationship existed between him and Bartlett: he and Bartlett shared a business relationship wherein Bartlett purported that he would advise Landow about investments with Landow's self-stated investment objectives and risk tolerance in mind.[28]

But Landow's claim is one for breach of fiduciary duty, not breach of a confidential relationship. Landow asks for leave to amend to cure any deficiency in his complaint, arguing

---

[24] *Tretiak*, 22 P.3d at 1139.
[25] *Perry*, 900 P.2d at 337.
[26] *Id.* at 338.
[27] *Id.*
[28] Because I find that Landow has shown that a confidential relationship existed between him and Bartlett, I do not address whether he has shown the existence of a special relationship.

that he drafted it for state court where pleading standards are more liberal.[29] I am not persuaded that the deficiencies with this claim cannot be cured by amendment, so I dismiss it without prejudice and with leave to amend.

**B.     Misrepresentations and omissions**

Landow contends under his second claim for relief—entitled "misrepresentations and omissions"—that Bartlett and Berthel Company "knowingly and recklessly made representations and recommendations [that] induced [Landow] into purchasing inappropriate, high risk, illiquid securities."[30] He also contends that defendants "knowingly and recklessly" made material misrepresentations and omissions about the risks of purchasing the securities, their valuations, and their prospects for success and that "[defendants] had independently performed an industry approved level of 'due diligence' on the securities and found them safe, well[-]managed, income[-]generating investments."[31] Landow further contends that defendants represented that "they would exercise due care and diligence in monitoring [Landow's] investments . . . and . . . that the valuations reported accurately reflected the current market value of the investments."[32] In moving to dismiss this claim, Bartlett and Berthel Company interpret it to be one for fraudulent misrepresentation.[33] They argue that this claim isn't pled with the required particularity, the alleged statements are not actionable because they are merely sales puffery, and Landow failed to allege facts to show reasonable reliance and proximate causation.[34]

---

[29] ECF No. 12 at 16–17.
[30] ECF No. 1-1 at ¶ 39.
[31] *Id.* at ¶¶ 40–43.
[32] *Id.* at ¶ 44.
[33] ECF No. 6 at 12–16.
[34] *Id.* at 15–16.

7

Landow responds by ignoring defendants' points—except for those on loss causation, which he argues are misplaced because this isn't a case about fraud on the market—and instead states what the elements are for a negligent-misrepresentation claim and why he has pled enough facts to show proximate cause.[35] It isn't clear from Landow's complaint if he intended to plead fraudulent misrepresentation, negligent misrepresentation, or both. The claim is deficient because it lacks this basic clarity.

In Nevada, negligent misrepresentation and fraudulent misrepresentation both require proof that (1) the defendant supply false information or make a false representation,[36] (2) plaintiff justifiably relied on the misrepresentation, and damage to plaintiff resulting from his reliance.[37] Negligent misrepresentation also requires proof that defendant "failed to exercise reasonable care or competence in obtaining or communicating the information."[38] Fraudulent misrepresentation, on the other hand, also requires proof of the "[d]efendant's knowledge or belief that the representation is false (or had an insufficient basis for making the misrepresentation)" and "intention to induce plaintiff to act or refrain from acting in reliance upon the misrepresentation."[39]

---

[35] ECF No. 12 at 13–14.

[36] The tort of negligent misrepresentation "requires an affirmative false statement; a mere omission will not do[,] so alleged omissions can be pursued only under the theory of fraudulent misrepresentation. *See Republic Bank & Trust Co. v. Bear, Stearns & Co., Inc.*, 707 F. Supp. 2d 702, 713–14 (W.D. Ken. 2010) (applying Kentucky law, which, like Nevada, "follows the Restatement" for negligent misrepresentation).

[37] *Compare Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1153 (Nev. 2013) (quoting Restatement (Second) of Torts § 552 for the elements of negligent misrepresentation), *with Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992) (stating the elements of fraudulent misrepresentation).

[38] *Halcrow*, 302 P.3d at 1153.

[39] *Bulbman*, 825 P.2d at 592.

8

Regardless of which version of this tort is alleged, the circumstances constituting fraud or mistake must be stated with particularity.[40] "Rule 9(b) demands that the circumstances constituting the alleged fraud [or mistake] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charged and not just deny that they have done anything wrong."[41] Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."[42] This requirement serves three purposes: (1) "to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs"; (2) "to protect those whose reputation would be harmed as a result of being subject to fraud charges"; and (3) "to prohibit plaintiffs from unilaterally imposing upon the court, the parties[,] and society enormous social and economic costs absent some factual basis."[43]

According to Landow, Bartlett represented that the securities he recommended "were tailored to [Landow's] retirement needs and moderate risk tolerance[,]"[44] but Landow doesn't state when and where Bartlett made this statement or why it is false. Facts about time and place are also missing from Landow's allegation that Bartlett and Berthel Company represented that "[they] had independently performed an industry approved level of 'due diligence' on the securities and found them safe, well[-]managed, income[-]generating investments."[45] Statements that an investment is "safe" or "well managed" are not actionable in fraud because they are

---

[40] Fed. R. Civ. P. 9(b).
[41] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotation omitted).
[42] *Id.* (quotation omitted).
[43] *Id.* at 1125 (quotation omitted).
[44] ECF No. 1-1 at ¶ 39.
[45] *Id.* at 41.

9

opinions or sales puffing.[46] The alleged statement that these were income-generating investments refers to objective information and is actionable, but Landow doesn't allege why it was false. Landow fails to allege when and where defendants "represented that they would exercise due care and diligence in monitoring [his] investments . . . [and] that the valuations reported accurately reflected the current market value of the investments."[47] He also fails to state why these statements were false.

Landow's allegation that defendants "made false statements of material fact and omitted to state necessary material facts concerning the risks of purchasing these securities, their valuations[,] and their prospects for success" is too conclusory. And a statement about an investment's prospects for success calls for an opinion or prediction about the future and isn't generally actionable in fraud. Finally, Landow offers the "key points [that were] raised during the sales presentations" for each of the 25 investments,[48] but he does not clearly identify the false statements that were made during these presentations, who made them, and why they were false. Despite all these deficiencies, it does not yet appear that Landow cannot plausibly plead claims for negligent or fraudulent misrepresentation, so I dismiss his "misrepresentations and omissions" claim without prejudice and with leave to amend.

---

[46] *See Bulbman*, 825 P.2d at 592 (explaining that representations about the cost and time to install a telephone system are estimates and opinions based on past experience" and "representations as to the reliability and performance of the system constitute mere commendatory sales talk about the product ('puffing')" and are "not actionable in fraud").

[47] ECF No. 1-1 at ¶ 44.

[48] *Id.* at ¶ 15.

## C. Negligence

Many of the allegations under Landow's negligence claim concern Bartlett's alleged misrepresentations.[49] I dismiss these allegations from this claim because they are duplicative of Landow's misrepresentations and omissions claim. What meager facts remain are not enough to plausibly state a claim for negligence[50] against either defendant or negligent supervision[51] against Berthel Company. For example, Landow alleges that the defendants owed him "a duty to act with reasonable care in the handling of his investments, said care being measured by the customary standards and practices of the securities industry."[52] He concludes that defendants failed to act "with such reasonable care, thereby causing [Landow] actual damages."[53] But the facts that he states about the breach of this duty concern Bartlett's alleged misstatements about the securities' values and prospects, not that Bartlett mishandled any of Landow's investments.[54] And Landow's allegations that Berthel Company was negligent in failing to supervise Bartlett with the handling of client's investments are similarly conclusory and vague.[55] Still, it is not yet apparent that Landow cannot plausibly plead claims for negligence or negligent supervision, so I dismiss his negligence claim without prejudice and with leave to amend.

---

[49] *Id.* at ¶¶ 49–50.

[50] Negligence requires proof of four elements: (1) the existence a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages. *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1175 (Nev. 2008).

[51] Negligent supervision or training requires proof that: (1) the employer owed a general duty to use reasonable care in training or supervising the employees to make sure that they are fit for their positions, (2) breach, (3) injury, and (4) causation. *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996).

[52] ECF No. 1-1 at ¶ 48.

[53] *Id.*

[54] *See, e.g., id.* at ¶¶ 49–51.

[55] *Id.* at ¶ 52.

11

**D.     Breach of contract**

Landow contends under his fourth claim for relief that Bartlett and Berthel Company breached their agreement to "abide by the rules and regulations" promulgated by the National Association of Securities Dealers (NSAD), the Financial Industry Regulatory Authority (FINRA), the New York Stock Exchange (NYSE), "and the securities laws then in effect in Nevada and the United States."[56] Landow states no other information about this alleged agreement between him and the defendants.

Bartlett and Berthel Company argue that I should dismiss this claim because in no way do Landow's allegations plausibly state that an enforceable contract exists between them.[57] Most fatally, defendants argue, their alleged agreement to abide by existing rules, laws, and regulations is not adequate consideration under Nevada law.[58] Landow ignores these points and instead responds that this claim isn't based on any agreement between him and Bartlett or Berthel Company, but on Berthel Company's membership agreement with FINRA and Landow's status as a third-party beneficiary of that agreement.[59] Defendants reply that Landow hasn't alleged any facts to support his new third-party-beneficiary theory and, regardless, that theory has been "repeatedly rejected by courts across the country[,]" including the Ninth Circuit, as attempts to circumvent the fact that there is no private right of action under rules promulgated by any of these associations or regulatory authorities.[60]

---

[56] *Id.* at ¶ 57.
[57] ECF No. 6 at 10–11.
[58] *Id.* at 11 (quoting *Clark County. v. Bonanza No. 1*, 615 P.2d 939, 944 (Nev. 1980)).
[59] ECF No. 12 at 14–16.
[60] ECF No. 15 at 5–7 (collecting cases).

Landow has not stated enough facts to plausibly show that a contract exists between him and Bartlett or Berthel Company. Nor has he sufficiently pled that he is entitled to third-party-beneficiary status under Nevada law. But I am not persuaded that Landow cannot state a breach-of-contract claim against either defendant. I therefore dismiss Landow's breach-of-contract claim without prejudice and with leave to amend.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Bartlett and Berthel Company's motion to dismiss **[ECF No. 6] is GRANTED.** IT IS FURTHER ORDERED that Landow has leave to amend his claims to cure the deficiencies identified in this order.[61] **Landow must file his amended pleading by March 14, 2019.**

Dated: March 4, 2019

_____
U.S. District Judge Jennifer A. Dorsey

---

[61] Because I have granted Landow leave to amend all his claims, I do not reach the merits of defendants' argument that those claims are time-barred.